IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GREENBERRY INDUSTRIAL, LLC,

   Plaintiff,

     v.

ESI, INC. OF TENNESSEE,

   Defendant.

CIVIL ACTION FILE
NO. 1:22-CV-206-TWT

**OPINION AND ORDER**

This is a breach of contract action. It is before the Court on the Defendant's Motion for Partial Judgment on the Pleadings [Doc. 27]. For the reasons set forth below, the Defendant's Motion for Partial Judgment on the Pleadings [Doc. 27] is DENIED.

I. **Background**

The Plaintiff, Greenberry Industrial, LLC ("GBI"), is an industrial fabricator that offers a variety of processing piping services. (Am. Compl. ¶ 2). The Defendant, ESI, Inc. of Tennessee ("ESI"), is a general contractor that provides engineering, procurement, and construction services to support energy projects. (*Id.* ¶ 4). In the present case, ESI subcontracted GBI to provide certain services in support of a boiler replacement project in Port Hudson, Louisiana ("the Project"), and the parties memorialized their agreement in a final purchase order ("the Subcontract"). (*Id.* ¶¶ 5, 8, 16).

After entering into the Subcontract, GBI and ESI also executed six Change Orders that altered the scope of GBI's work on the Project—though the parties dispute the validity of certain wording in the Change Orders. (*Id.* ¶¶ 23–31). And in addition to the work under the six Change Orders, GBI claims that it performed Extra Work, beyond the scope of the Change Orders, for which ESI has refused to provide compensation. (*Id.* ¶¶ 32–34). GBI also claims that it is entitled to an Early Completion Bonus because it achieved Mechanical Completion under the Subcontract prior to July 2, 2021, which it claims was the effective early completion deadline. (*Id.* ¶¶ 35–39). Between the Subcontract, the Early Completion Bonus, the Change Orders, and the Extra Work, GBI alleges that ESI failed to pay the full amount owed for the services it performed. (*Id.* ¶¶ 40–46).

In response to GBI's allegations in the Amended Complaint, ESI counterclaims for damages, alleging that GBI failed to perform its duties under the Subcontract and the Change Orders. ESI claims that it is entitled to liquidated damages for GBI's failure to reach Mechanical Completion by June 17, 2021, which ESI claims was the effective completion deadline as established in Change Order 2. (*Id.* ¶¶ 30, 34). ESI also claims that GBI breached the Subcontract by issuing eleven "frivolous" Change Orders for the Extra Work that GBI claims it completed on the Project. (*Id.* ¶¶ 41–44). Finally, ESI claims damages for its defense of a lien claim that GBI filed in Louisiana, for its defense of the present lawsuit, and for various expenses it

2

incurred after GBI allegedly breached the Subcontract. (*Id.* ¶¶ 45–51). ESI now moves for partial judgment on the pleadings as to GBI's claims and its counterclaims.

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court should grant a motion for judgment on the pleadings where "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion for judgment on the pleadings, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the nonmoving party. *Scott*, 405 F.3d at 1253.

### III. Discussion

ESI moves for partial judgment on the pleadings, arguing that GBI is not entitled to recover damages under either its breach of contract theory or its quasi-contractual theories. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 1). Specifically, ESI argues that GBI is barred from recovering an Early Completion Bonus, that the relief GBI seeks is barred by the Subcontract or has been waived, that GBI's quasi-contract theories fail because an express contract exists, and that ESI is entitled to recovery on its liquidated and direct damages counterclaims. (*Id.* at 2). In response, GBI argues generally that ESI's motion rests largely on its Answer and fails to address GBI's Amended Complaint. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 1). The Court first considers GBI's contractual theories of relief, then GBI's quasi-contractual theories, and lastly ESI's counterclaims.

#### A. GBI's Contractual Theories of Relief

ESI makes several arguments regarding its contention that GBI's breach of contract claim is barred by the Subcontract. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 5 (citing *Simmons v. Universal Prot. Servs., LLC*, 349 Ga. App. 374, 377–78 (2019) ("The cardinal rule of contract construction is to ascertain the parties' intent and where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties." (citation omitted)))). ESI argues (1) that the Subcontract expressly bars GBI from recovering indirect or consequential damages, (2) that

4

GBI has waived its right to additional recovery for its claimed Extra Work by agreeing to certain Change Orders, (3) that GBI is not entitled to a price increase or deadline extension because it failed to provide timely notice, (4) that the Subcontract negates GBI's claim to recover the Early Completion Bonus, (5) and that GBI was not entitled to deadline extensions due to weather delays. (*Id.* at 5–15). The Court addresses each of these arguments and GBI's responses thereto in turn.

### 1. Indirect and Consequential Damages

ESI argues that the following terms of the Subcontract expressly bar GBI's recovery of indirect or consequential damages and thus that it is entitled to judgment as a matter of law as to such claims made by GBI:

> Limitation of Liability – Notwithstanding any other provision to the contrary in this Subcontract . . . neither party shall be liable to the other for any indirect, incidental, consequential, special, exemplary or punitive damages arising from or related to this Subcontract Agreement, its performance, enforcement, breach or termination, such as, but not limited to, loss of revenue, anticipated profits, or loss of business . . . .

(*Id.* at 6 (quoting Ans. ¶ 33; Doc. 20-2 ¶ 29)). ESI claims that GBI seeks to recover such damages "as impact costs due to delay or Extra Work" and its "alleged inefficiency and productivity losses." (*Id.* at 7). GBI argues, in response, that ESI's argument fails for several reasons. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 9).

First, GBI argues that ESI fails to specify which of GBI's claims are for indirect or consequential damages. (*Id.*). GBI notes that ESI mentions its

5

inefficiency/productivity claim but presents no evidence that the claim falls within the Limitation of Liability clause. (*Id.* at 10). In GBI's view, all of its claims seek compensation for direct costs from the Subcontract and direct costs from the "extra and changed work and delays." (*Id.*). And regarding the inefficiency claim specifically, GBI claims that it seeks only "the direct overhead costs from inefficiency due to overtime work and extra manpower GBI provided as a result of extra and changed work and delays." (*Id.*). Such a claim, GBI contends, amounts to a material dispute as to whether the claim is indirect or consequential. (*Id.*). Second, GBI argues that ESI's actions indicate that GBI's claimed damages are not indirect or consequential damages and that ESI has, by its conduct, waived any limitation on GBI's right to recover such damages, referencing the specific amount that ESI has already paid GBI under the Subcontract and certain Change Orders. (*Id.* at 11). Finally, GBI argues that ESI has agreed to pay indirect costs through its assent to the express terms of the Change Orders. (*Id.* at 12).

In reply, ESI argues that it does not have a duty to identify which of GBI's claimed damages are indirect or consequential. (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 3–4). ESI then references an allegation of the Amended Complaint that specifies certain direct damages flowing from the Change Orders and claims that anything in excess of those damages must logically be indirect damages. (*Id.* at 4). Finally, ESI contends that GBI's reference to the specific payments ESI has made under the

6

Subcontract and Change Orders are irrelevant as to the issue of the Limitation of Liability clause. (*Id.*).

The Court concludes that ESI is not entitled to a judgment that GBI is precluded from recovering indirect, incidental, or consequential damages. The Court begins its analysis with the terms of the Subcontract itself: "neither party shall be liable to the other for any indirect, incidental, consequential, special, exemplary or punitive damages arising from or related to this Subcontract Agreement, its performance, enforcement, breach or termination." (Doc. 20-2 ¶ 29). GBI notes that the Subcontract itself does not define indirect, incidental, or consequential damages, nor do the Black's Law Dictionary definitions meaningfully distinguish (or helpfully define) the types of damages at issue either. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 10); *see also* Damages, Black's Law Dictionary (11th ed. 2019) (defining both 'indirect damages' and 'consequential damages' as "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act" and 'incidental damages' as "[l]osses reasonably associated with or related to actual damages"). The provision of the Subcontract continues, however, and provides a non-exhaustive list of examples of the enumerated types of damages: "such as, but not limited to, loss of revenue, anticipated profits, or loss of business." (*Id.*).

ESI does not appear to contend that GBI pleads damages of the sort exemplified in the Subcontract (e.g., loss of revenue) but rather takes issue

7

with GBI's claims for "alleged inefficiency and productivity losses." (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 7). The Court finds that even if such claims constitute indirect, incidental, or consequential damages (a determination that the Court declines to make at this point), the claims are not clearly barred at present due to the language in the various Change Orders covering overtime rates and indirect overhead costs. (*See, e.g.*, Doc. 20-24, at 3; Doc. 20-25, at 1; Doc. 20-26, at 1). Significantly, the Change Orders' coverage of "indirect overhead costs" precludes a finding that indirect, incidental, or consequential damages are barred as a matter of law. Accordingly, to the extent ESI seeks judgment on the pleadings in its favor regarding claims for those types of damages, its motion should be denied.

### 2. Waiver of Right to Additional Recovery for "Extra Work"

ESI next argues that GBI waived its right to recover for the Extra Work it agreed to perform when it accepted Change Order 1 and failed to timely object to Change Orders 3, 4, and 5. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 7–8 (citing *Vratsinas Const. Co. v. Triad Drywall, LLC*, 321 Ga. App. 451, 454 (2013))). In response, GBI argues that it has rebutted ESI's claims of waiver in its Answer to ESI's Counterclaim, creating a material dispute of fact that bars judgment on the pleadings. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 12–13 (citing *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1333 (N.D. Ga. 2017))). In reply, ESI argues that GBI's arguments in response fail because GBI (1) "does not explain why

8

the specific terms of the Change Orders in question cannot govern their offer and acceptance," (2) "fails to point to any provision in the Subcontract that prohibits ESI from prescribing a certain amount of time for GBI to respond to a given change order," and (3) "does [not] point to any common law princip[les] that prohibit ESI from adding terms to its Change Orders limiting the amount of time GBI had to respond before they took effect." (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 5).

Whether GBI may recover damages for its claimed Extra Work appears to hinge on the following language provided in each of the original Change Orders that ESI tendered to GBI, but that GBI deleted upon its purported acceptance: "This will effectively maintain project schedule and cover all additional GBI project overhead costs." (Doc. 20-24, at 3; Doc. 20-25, at 1; Doc. 20-26, at 1). ESI claims that GBI failed to timely respond to its tendering of the Change Orders and that its failure to do so amounted to an acceptance under their original terms, including the excerpted provision above. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 8). ESI relies on the following language in the Change Orders for that proposition: "The order acknowledgement and acceptance must be completely filled in and returned to [ESI] within five (5) days after its receipt by [GBI]. . . . Failure by [GBI] to return order acknowledgement within said timeframe shall constitute complete acceptance of this Order as transmitted by [ESI]." (*Id.* (quoting Doc. 20-24, at 4; Doc. 20-25, at 1; Doc. 20-26, at 2)).

9

In its Answer to ESI's Counterclaim, GBI denies that it accepted the proposed Change Orders "with ESI's unilateral deadline or limiting terms" and "avers that ESI cannot unilaterally require change order terms to be binding unless accepted by a specific date and that the Subcontract between ESI and [GBI] makes no provision for such a requirement." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 12–13 (quoting Pl.'s Ans. ¶¶ 26–29)). ESI takes issue with GBI's reliance on its Answer, arguing that GBI fails to cite to case law suggesting ESI could not limit the amount of time for GBI's response before the agreement took effect. (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 5).

The Court concludes that ESI cannot, by the terms of its offer, purport to define what constitutes acceptance by GBI in the absence of a response to its offer. It is well-settled under Georgia contract law that "[t]o constitute a contract, [an] offer must be accepted *unequivocally* and without variance of any sort." *Bennett v. Novas*, 364 Ga. App. 364, 366 (2022) (emphasis added) (citation omitted). Here, ESI claims that GBI's failure to respond within the timeframe it specified amounted to acceptance of the terms of the Change Orders as drafted. But absent an unequivocal manifestation of assent to the terms of the offer, a contract cannot be formed. ESI ironically faults GBI for failing to cite authority that suggests it could not limit the amount of time for GBI's response before the agreement took effect. To the contrary, the burden on a motion for judgment on the pleadings falls on the movant, and ESI fails

10

to cite authority suggesting that it could unilaterally decide that the offeree's failure to respond within a specified time constituted acceptance. ESI does not provide authority suggesting that GBI's silence amounted to acceptance of the Change Order as issued, nor does ESI suggest that GBI by its course of conduct agreed to "effectively maintain project schedule and cover all additional GBI project overhead costs." Accordingly, ESI is not entitled to a judgment that GBI waived its right to recover damages for the Extra Work it allegedly performed without compensation from ESI.

### 3. Timely Notice

ESI then argues that GBI is not entitled to a price increase or deadline extension due to delays because it failed to provide timely notice of the delays. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 9). In response, GBI disputes ESI's contention that its claims are barred by untimely notice for several reasons. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 14–15). First, GBI claims that ESI never alleged in its pleadings that GBI failed to give timely notice as to any of its specific claims. (*Id.* at 14). Second, GBI claims that ESI only raised the issue of notice in its Answer and thus that ESI's argument cannot support a judgment on the pleadings because it did not require a response from GBI. (*Id.* (citing Fed. R. Civ. P. 8(b)(6))). And finally, GBI claims that ESI's own conduct indicates that it was not enforcing deadlines for submission of claims. (*Id.* at 15). In reply, ESI argues that GBI failed to plead that it complied with the Subcontract's notice requirements and

11

also failed to plead that the alleged delays were attributable to ESI and satisfied the Subcontract's "ESI Caused Delay" provision. (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 7).

Here, ESI cites to no authority suggesting that GBI needed to have pleaded timely notice to properly state its claim. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Construing the allegations in Paragraphs 32 and 33 of the Amended Complaint in the light most favorable to GBI, the Court concludes that GBI has indeed pleaded factual content that allows the Court to reasonably infer that ESI is liable for the damages GBI seeks. If, at the summary judgment stage, ESI produces evidence supporting its argument that GBI failed to provide timely notice for the price increases or deadline extensions to which it claims entitlement, such evidence may support a judgment in favor of ESI at that point. But at the pleading stage, the Court concludes that GBI's claims are not barred by any alleged untimely notice.

### 4. Early Completion Bonus

ESI also claims that GBI's alleged failure to complete the Project by the Subcontract's specified Mechanical Completion Date disallows GBI's claimed recovery of the Early Completion Bonus. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 10). GBI claims, in response, that it is entitled to an extension of the Mechanical Completion Date to at least July 9, 2021, and an

extension of the Early Completion Date to July 2, 2021, meaning its achievement of Mechanical Completion on June 20, 2021 preceded the Early Completion Date. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 15–16). In reply, ESI contends that GBI failed to sufficiently allege that it ever achieved Mechanical Completion because it did not allege that it submitted certain documentation and packages to ESI personnel, which was required to achieve Mechanical Completion under the Subcontract. (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 9).

The Court finds that ESI is not entitled to a judgment on the pleadings stating that GBI's recovery of the Early Completion Bonus is disallowed. Specifically, ESI cites to no part of the Subcontract that would bar the deadline extensions to which GBI claims it is entitled in Paragraphs 35 and 36 of the Amended Complaint. (Am. Compl. ¶¶ 35–36). Moreover, ESI cites no authority suggesting that GBI's failure to plead the submission of certain documentation and packages to ESI in its Amended Complaint warrants dismissal for failure to state a claim. Accordingly, ESI's motion for judgment on the pleadings should be denied as to GBI's claim for recovery of the Early Completion Bonus.[1]

---

[1] ESI cites to a variety of Georgia case law in this section of its brief, arguing that the Court may not rewrite the Subcontract, that the Subcontract's "time is of the essence" provision added materiality to all deadlines within the Subcontract, and that interpreting the Mechanical Completion and Early Completion Bonus provisions contrary to ESI's position would render the provisions meaningless. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 10–13). The Court concludes that the cited case law does not govern the present motion. Notably, none of ESI's cited cases were postured at

### 5. Weather Delays

Finally, ESI argues that GBI is not entitled to any deadline extensions under the Subcontract due to weather delays. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 13). In response, GBI argues that ESI provided the Subcontract's definition of Force Majeure but apparently "forgot to include an explanation of the effect of a Force Majeure Event" on its delay claim. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 16–17). ESI replies that certain provisions of the Subcontract, when read together, establish that "delays to GBI's work on the Project will only be considered Force Majeure delays worthy of an extension to the Mechanical Completion deadline if they satisfy the Force Majeure definition." (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 10 (citing Doc. 20-3, at 1)). ESI cites to the following language in the Subcontract's Liquated Damages provision to support its contention: "Force Majeure delays are governed by the Force Majeure Events definitions above." (*Id.*) But the Court reads nothing in the Subcontract's provisions cited by ESI that definitively establishes that delays in GBI's work will only warrant an extension if they satisfy the Subcontract's Force Majeure definition. (*See* Doc. 20-3, at 1).

---

the motion to dismiss or judgment on the pleadings stage. (*See id.*). In addition, the Court does not rewrite any part of the Subcontract in denying ESI's motion for judgment on the pleadings on this issue or make any determinations as to the materiality of any deadlines within the Subcontract. Such issues are indeed appropriate for resolution at a later stage in this case, as evidenced by the procedural posture of the case law supporting ESI's failed arguments.

Nonetheless, GBI also argues that even if the Subcontract provided that delays in its work would only warrant an extension if they satisfied the Force Majeure definition, its allegations include that certain weather events—rainy days—indeed satisfied the Subcontract's Force Majeure definition. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 17–18). ESI argues, in reply, that GBI's argument on this point is "irrelevant" because it failed to include such allegations in its Amended Complaint. (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 11–12). The Court agrees with GBI. Again, GBI need not have pleaded the specific amounts of precipitation at the Project site as compared to the ten-year averages to properly state its claim, as ESI contends; rather, that GBI pleaded it is entitled to a deadline extension due to weather delays is sufficient for the plausible pleading standard. Thus, ESI is not entitled to a judgment barring GBI's claims for deadline extensions due to weather delays.

### B. GBI's Quasi-Contractual Theories of Relief

In addition to its arguments regarding GBI's breach of contract claim, ESI also argues that GBI's quasi-contractual theories of relief are barred. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 15). ESI argues that the existence of the Subcontract bars GBI's claims for relief under the doctrines of (1) quantum meruit, (2) unjust enrichment, and (3) promissory estoppel. (*Id.* at 15–17). In response, GBI argues that its quasi-contractual theories of relief are properly pleaded as alternate, inconsistent statements of a claim under

15

Federal Rule of Civil Procedure 8. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 18). In reply, ESI argues that GBI cannot recover under its quasi-contractual theories because the Subcontract and Change Orders prohibit the recovery of indirect damages that GBI claims. (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 12–13).

The Court agrees with GBI and finds that its quasi-contractual claims are properly pleaded as alternate theories of relief to its breach of contract claim. *See Vivid Invs., Inc. v. Best W. Inn–Forsyth, Ltd.*, 991 F.2d 690, 692 (11th Cir. 1993); *Campbell v. Ailion*, 338 Ga. App. 382, 388 (2016). Moreover, even if the Court later determines that the Subcontract or Change Orders bar GBI's claims for damages for the Extra Work it allegedly performed without compensation, GBI may still be entitled to recover additional damages pertaining to the Extra Work under its quasi-contractual theories to the extent it conferred a benefit on ESI or detrimentally relied on promises made by ESI. Accordingly, ESI is not entitled to a judgment that GBI's quasi-contractual theories of relief are barred.

### C. ESI's Counterclaims

Finally, ESI argues that it is entitled to recover liquidated damages due to GBI's failure to complete the Project by the Mechanical Completion Date and direct damages on expenses that ESI incurred in paying various third parties to complete work that GBI allegedly failed to complete under its scope of work. (Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 18–19).

In response, GBI argues that ESI's contentions as to its Counterclaims "are essentially a motion for summary judgment based on disputed allegations with no supporting evidence." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, at 22).

Regarding the liquidated damages that ESI claims for GBI's alleged failure to complete the Project by the Mechanical Completion Date, the Court finds that ESI is not entitled to judgment on the pleadings. As concluded above, whether GBI is entitled to an extension of the Mechanical Completion Date that it pleaded in its Amended Complaint is an issue appropriate for resolution at a later stage in this litigation. And thus, whether ESI is entitled to recover liquated damages due to GBI's failure to complete the Project by the Mechanical Completion Date is inappropriate for resolution at present.

Regarding the damages that ESI claims for expenses it incurred in paying third parties, the Court also concludes that ESI is not entitled to judgment on the pleadings. ESI argues specifically that "GBI does not deny that it failed to install a Natural Gas Hot Tap or that it failed to conduct a Third-Party Steel Inspection, but only denies that those tasks were within its scope" and that GBI's position contradicts the Subcontract. (Reply Br. in Supp. of Def.'s Mot. for Partial J. on the Pleadings, at 13–15 (citing Doc. 20-4, at 10, 14; Doc. 20-5, at 7, 11; Doc. 20-15, at 1; Doc. 20-16, at 2–3)). Construing the allegations as pleaded in ESI's Third Counterclaim in the light most favorable to GBI, the Court cannot conclude that ESI is entitled, as a matter of law, to a

17

judgment on the pleadings regarding its claim. GBI specifically denies that its scope of work included either the natural gas hot tap or the third-party steel inspection. (Pl.'s Ans. to Def.'s Countercls. ¶ 50). And although the attachments to the Subcontract that ESI cites in support of its contention indeed contemplate GBI's responsibility for the natural gas hot tap and third-party steel inspection, ESI and GBI executed six Change Orders subsequent to the Subcontract, in addition to the Extra Work that GBI claims it performed on the Project. GBI's scope of work and responsibilities clearly changed over the course of the Project, and that reality indicates that judgment on the pleadings in favor of ESI would be premature, considering GBI's denial of ESI's allegations. Accordingly, ESI is not entitled to a judgment awarding damages for expenses it allegedly incurred in paying third parties to complete the Project.

## IV.   Conclusion

For the foregoing, the Defendant's Motion for Partial Judgment on the Pleadings [Doc. 27] is DENIED.

SO ORDERED, this ___12th___ day of December, 2022.

/s/ Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge